STATE OF ILLINOIS v. FLETCHER and another.

*(Circuit Court, N. D. Illinois.   December 11, 1884.)*

1. FEDERAL ELECTIONS — COMMISSION OF CRIME BY DEPUTY-MARSHALS — JURISDICTION—REV. ST. § 643.

 The mere holding of a commission as a deputy-marshal of the United States at the time a party is indicted for murder or any other offense ag   nst the laws of a state, committed at a federal election, is not of itself sufficient ground for depriving the state court of jurisdiction of the case, and does not entitle the accused to have it removed into the circuit court of the United States under section 643 of the Revised Statutes.

2. SAME—PETITION FOR REMOVAL.

 Where a deputy-marshal, who has been indicted for murder and held for trial in a state court, in his petition for a removal of the case to the United States court denies that he committed the murder, and avers that the indictment was found against him for acts done by him, if done at all, as a deputy-marshal, while in the performance of his duties at an election to choose a representative to congress, the petition does not state facts entitling him to a removal.

3. SAME—BREACH OF THE PEACE AT POLLS.

 There is no federal statute making a disturbance at the polls amounting to a breach of the peace an offense against the United States, and a deputy-marshal who is arrested by other deputy-marshals for such disturbance should be surrendered to the state authorities.

Petition for Removal of Case to Circuit Court.

*Richard S. Tuthill,* U. S. Dist. Atty., and *C. M. Dawes,* Asst. U. S. Dist. Atty., for petitioners.

GRESHAM, J.   The sworn petition of John Fletcher and Julius Yattaw states that on the twenty-ninth day of November, 1884, they and James Smith were jointly indicted in the criminal court of Cook county, Illinois, for the crime of murder upon one William Curnan, by which a criminal prosecution was begun, in the name and by the authority of the people of the state of Illinois, against the petitioners, which is now pending in the state court, and upon which they are confined in the county jail of Cook county awaiting trial.   After further stating that at the time the alleged killing and murder occurred, namely, on the fourth day of November, 1884, the petitioners and James Smith, their co-defendant, were duly appointed and qualified deputy-marshals of the United States, and assigned to duty at the Third election district of the Second ward of the city of Chicago, at an election to choose a representative in the congress of the United States, the petition proceeds :

"And that each of your petitioners was then acting under color of said office and in pursuance of said laws; and that the act for the alleged commis-

sion of which said arrest was made, and said subsequent proceedings against your petitioners were had, was done, if done at all, in their own necessary self-defense, and while engaged in the discharge of their duties as deputy-marshals as aforesaid; * * * that, as such officers, it was their duty to keep the peace, and preserve order at the polling place aforesaid; that on the said fourth day of November, at said polling place, a disturbance and breach of the peace occurred between said James Smith, then and there a deputy of the marshal of the United States for said Northern district, and a large number of persons incited thereto by special constables of said Cook county, whose names are, to your petitioners, unknown; that said constables and said large number of persons were then threatening said Smith with personal violence and injury; that your petitioners, as such officers aforesaid, in order to quell said disturbance, and to protect said Smith, and to preserve order at the polling place aforesaid, then and there arrested said Smith and took him into custody; that while your petitioners so had said Smith in custody, and were, with him, peacefully and lawfully proceeding to the office of Philip A. Hoyne, Esq., commissioner of this court, there to make complaint against him, said Smith, for disturbing the peace at said polling place, they were assaulted and fired upon with pistols and other deadly weapons in the hands of a large body of armed men, among whom was said Curnan, greatly outnumbering your petitioners, who threatened your petitioners and said Smith unless your petitioners took said Smith to the Harrison-street police station, in the city of Chicago; and your petitioners aver that they fired no shot at their said assailants, and made no attack upon them whatever, or against said Curnan; but they aver and state that some person, to them unknown, then attacking your petitioners, did shoot and kill the said Curnan, as they believe, which is the murder and killing mentioned in said indictment; and your petitioners aver that said prosecution was begun and commenced against them for acts done, if done at all, by your petitioners as deputy-marshals as aforesaid, and while in the performance of their duty while lawfully acting under the provisions of title 26 of the Revised Statutes of the United States—the ' Elective Franchise.' "

The prayer is that a writ of *habeas corpus cum causa* may issue, directed to the criminal court of Cook county, requiring that court to stay all further proceedings against the petitioners; that the suit be removed into this court for hearing and determination; and that this court direct the marshal of the United States for this district to take the petitioners into his custody, and hold them for further orders. A copy of the indictment is attached to the petition, and made a part of it. The motion is based upon section 643 of the Revised Statutes. So much of this section as need be noticed provides that when any civil suit or criminal prosecution is commenced against any officer of the United States, or other person, on account of any act done under the provisions of the act upon the subject of the elective franchise, or on account of any right, title, or authority claimed by such officer, or other person, under any of the provisions of that act, such suit or prosecution may, at any time before the trial or final hearing thereof, be removed for trial into the circuit court next to be holden in the district where the same is pending, upon the verified petition of such defendant to such circuit court, setting forth the nature of the suit or prosecution. The case is thereupon entered on the docket of the circuit court, and proceeded with as a cause originally commenced in

that court. When the suit or prosecution is commenced by *capias,* or any form of proceeding by which a personal arrest is ordered, the clerk is required to issue a writ of *habeas corpus cum causa,* a duplicate of which is delivered to the clerk of the state court, or left at the office by the marshal of the district òr his deputy, or by some person duly authorized thereto; and thereupon the state court is obliged to stay all further proceedings in the case; and the suit or prosecution, on the delivery of such process, or leaving the same as aforesaid, is held to be removed to the circuit court, and any further proceedings, trial, or judgment therein in the state court become void. If the defendant in the suit or prosecution be in actual custody on mesne process therein, it is the duty of the marshal, by virtue of the writ of *habeas corpus cum causa,* to take the body of the defendant into his custody, to be dealt with in the case according to law and the order of the circuit court, or, if in vacation, by any judge thereof.

If the petitioners have been indicted in the state court for an act done by them while fairly in the line of their duty as deputy-marshals of the United States, at one of the polling places in the city of Chicago at the late election, at which a representative in congress was voted for, and that fact appears in the petition, the case may be removed to this court for hearing. If the petition simply averred that the defendants stood indicted in the state court for an act done by them as deputy-marshals, or under color of their office, or the law authorizing their appointment and defining their powers and duties, without describing the act or circumstances under which it was committed, it would, perhaps, be the right and duty of this court to assert jurisdiction of the case; at least, until it should appear that the claim was unfounded. *Tennessee v. Davis,* 100 U. S. 257.

It is charged in the indictment that the petitioners shot and murdered William Curnan on the fourth day of November, 1884, in the county of Cook and state of Illinois, and the petition distinctly asserts that "neither of them fired any shot or did any act by reason of which the said Curnan came to his death, as set forth in the indictment." If they neither did the shooting, nor in any way contributed to Curnan's death, it follows that they have not been indicted for an act or acts done by them as deputy-marshals of the United States, and this court has no right to interfere with the jurisdiction of the state court. It is true, the petition contains an averment that the indictment was found against the petitioners for acts done by them, *if done at all,* as deputy-marshals of the United States, while in the performance of their duties as such. They did the killing, or contributed to it, or they did not; and nothing short of a positive averment that they did the act for which they stand indicted, and did it in the line of their duty as deputy-marshals of the United States, or under color of their authority as such officers, will entitle them to a removal of the case from the state court to this court for trial. The mere holding of a commission as a deputy-marshal of the United States at the time a

party is indicted for murder, or any other offense against the laws of a state, is not of itself sufficient ground for depriving the state court of jurisdiction of the case.

The petitioners state that James Smith, their co-defendant in the indictment, and also a deputy United States marshal, and a number of other persons, incited thereto by special constables of Cook county, were engaged in a disturbance and a breach of the peace at the polls; that Smith was threatened by the special constables, and such other persons, with personal violence; that, "in order to quell said disturbance and protect said Smith, and to preserve order at the polling place," they, the petitioners, took Smith into custody; that while proceeding with him to the office of Philip A. Hoyne, a commissioner of the United States, there to make complaint against him "for disturbing the peace at said polling place," they were fired upon by a large body of armed men, including Curnan, the deceased, who demanded that Smith should be taken to the Harrison-street police station, in the city of Chicago, and threatened both them and Smith unless he was taken there; and that, refusing to comply with this demand, they were fired upon, and some one of the attacking party shot and killed Curnan. It is not claimed by the district attorney, who appears for the petitioners, that Smith was in the line of his duty as a deputy-marshal when he was engaged in the breach of the peace at the polls, or that he had committed an offense against the United States for which Commissioner Hoyne might have held him for trial, or for which any court of the United States had jurisdiction to try and punish him. Instead of doing his duty as a deputy-marshal, Smith was engaged in a disturbance and breach of the peace at the polls. The petitioners had a right to arrest him for this offense, and, in a reasonable time, turn him over to the proper state authorities. He was simply a law-breaker, and the fact that he was a deputy-marshal of the United States entitled him to no more consideration or protection than others engaged in the same disturbance and breach of the peace. The district attorney admits that there is no federal statute making a disturbance at the polls amounting to a breach of the peace an offense against the United States. This is not a case in which deputy-marshals of the United States, in repelling force by force in defense of themselves or their prisoner, shot and killed an assailant. Smith had violated the laws of the state, and the petitioners refused to turn him over to the state authorities. They held him, it may fairly be inferred, to protect him because he was a deputy United States marshal, and to take him before Commissioner Hoyne, who had no jurisdiction to hear a complaint against him or to detain him.

The order prayed for is denied, and the petition is dismissed.