## UNITED STATES ex rel. ASHER v. COMMONWEALTH OF PENNSYLVANIA.

(District Court, E. D. Pennsylvania. December 3, 1923.)

### No. 61.

Removal of causes ⬳22—Criminal action by state against prohibition agent is removable.

A criminal prosecution in a state court against a prohibition agent for an act done under color of the Prohibition Act is removable, under Judicial Code, § 33 (Comp. St. § 1015).

Criminal prosecution by the State of Pennsylvania against James L. Asher. The cause was removed to the United States District Court on petition by the United States on the relation of defendant, and the Commonwealth of Pennsylvania files a motion to quash writ and a petition to remand to state court. Motion and petition denied.

Warren C. Graham and Samuel P. Rotan, both of Philadelphia, Pa., for petition and motion.

Francis B. Biddle, Asst. U. S. Dist. Atty., and George W. Coles, U. S. Dist. Atty., both of Philadelphia, Pa., opposed.

DICKINSON, District Judge. The underlying principles of law upon which the two parties affected by these motions rely are of the gravest importance. They are of importance, because they go to the unique governmental relations which we sustain to nation and state. Our allegiance, although in no sense divided, is none the less dual, and, because of this, the question must at times arise: Which, in a particular emergency, is the tie that binds? When by any sovereignty a law is passed, obedience to it must be enforced, and control over the officials who are commanded to enforce it cannot always be safely surrendered to another sovereignty. The policy of law thus indicated is clear enough, and the adoption and observance of it is imperative. When such officials, however, are the subjects of another sovereignty, whose laws must likewise be obeyed, any act or conduct of such officials must be discriminatingly scrutinized, to learn whether the act or conduct which is in question is one done under the protecting mantle of the first sovereign, whose decrees are being carried into execution, or one done as the subjects of the other. This can be determined by the character of the act done, but the important question remains of which sovereign is to determine the character of the act.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The very clear-headed and fair-minded counsel who represent here the nation and the state respectively have no difference over the broad proposition that, Congress having passed a law and committed its enforcement to executive officials, or in this respect, government agents may stand behind those agents in the performance of their official duties, by providing that charges of misconduct shall be passed upon by the judicial tribunals of the United States, although the charges may be of offenses against the laws of the state. The learned District Attorney, who is here asserting the sovereign rights of the states, stands upon the secondary proposition that Congress may, however, limit the protection thus extended, and that the ægis of its protection has been thus limited by Congress to those agents whose duty it is to enforce the revenue statutes of the United States, and has intrusted the protection of all others to the justice of the state against whose peace and dignity the defendants are charged to have offended.

The discussion is thus restricted to a review and survey of the statutes by which Congress has expressed its will and declared the policy of the law. Notwithstanding this narrowing of the question, it remains one of the very gravest importance and the greatest interest. It has in consequence been discussed by counsel, while not at undue length, yet with sufficient fullness and with clarity, and above all by a very gratifying display of the qualities of frankness, fairness, and considerateness. It would, because of this, be the due of counsel that they should have evidence that the fruits of the industry they have expended in the investigation and discussion of the cause had not been wasted, but that all which they urged with such ability had received due consideration. We have followed the argument with interest and profit, but in the view we have taken of the case there is no need to make it the subject of discussion.

The view we have taken is this: The very question now before us has been before trial courts on a number of occasions, as evidenced by the following cases (inter alios) which have been cited: Oregon v. Wood (D. C.) 268 Fed. 975; In re Higgins (D. C.) 273 Fed. 832; Florida v. Peters (D. C.) 284 Fed. 612; Massachusetts v. Bogan (D. C.) 285 Fed. 668; Smith v. Gilliam (D. C.) 282 Fed. 628.

The next thought is that, however the question is ruled, the rule should be uniform throughout the United States. It would never do as a working rule to have the protection invoked extended by one judge, but refused by another, or given in one district, but withheld in another. Every judge, however, to whom any question is presented, listens to an appeal made to him to pronounce his conscientious judgment of what is the law, and he cannot shunt the duty upon the shoulders of another. There springs from this the need of some rule of guidance in the event of a difference of opinion which may be entertained by different courts of equal authority. We think there is such guide, and it is that, when a question has been ruled by one court, and is afterwards presented to another of co-ordinate jurisdiction, the second court should accept and follow the ruling made, subject only to the limitation that the judgment rendered may in good conscience be accepted.

This means that if, when all the considerations on the one side and the other are weighed, there may be a difference of opinion to which side the balance inclines, yet it is felt that this is no more than a difference in judgment of the weight to be ascribed to the opposing considerations, and that there is room for a conscientious judgment in favor of either side, the first ruling made should be controlling. Judgments, however, are not matters of will, but of conviction, and if the second tribunal cannot bring its mind to accept of the ruling first made, it must perforce differ. A situation is thus created with which an appellate court can alone deal, and with which it is the special function of the appellate court to deal. The question, after it is thus settled, is, so far as concerns the trial courts, removed from the realm of discussion and reason to the realm of authority, and is no longer an open question. The ruling made is to them ex cathedra.

The question before us has, as we have seen, been made the subject of several rulings already. These rulings differ. In our judgment, the difference is one of opinion or judgment with respect to which side the balance inclines. Whether our minds inclined to one side or the other, we would yet feel that there was ample room for a difference of opinion, and, recognizing that the rule should be uniform and of general acceptance, could accept either view after a ruling had been once made, even if, as a case of the first impression, our view would have been different. Entertaining this view, as we do, of the proper course for us to pursue, we follow the main current of decisions, without an expression of what might otherwise have been our own individual opinion, as such expression of opinion would be to simply add one to the number of expressed opinions, without necessarily adding anything of value to the view which we might favor.

The motion to quash is accordingly refused, and the petition to remand is denied.